Narcisa Díaz Torres, Plaintiff and Appellee, v. Silverio Mo-
rales, Defendant and Appellant.

No. 10157. Argued April 3, 1950.—Decided June 23, 1950.

*Gloria María Mimoso de Laguna* for appellant. *Ernesto Juan
Fonfrías, Santiago Polanco Abréu,* and *Víctor Vargas Ne-
grón,* for appellee.

Per Curiam: On August 23, 1948 plaintiff brought an
action of unlawful detainer against the defendant alleging,
in brief, that she owned a two-story house, with garage—
described in the complaint—in the Municipality of Caguas,
which was acquired on January 21, 1948 by deed of the same
date before Notary Antonio L. López, which deed was record-
ed in the registry of property; that the defendant occupied
the upper floor of said house, with the garage, for a monthly
rental of $30 pursuant to a lease contract entered into with
the previous owner of the property; that the plaintiff acquired
the aforesaid real property exclusively in order to utilize it
in good faith and for immediate occupancy by herself and her
family as their dwelling; that the same day of the acquisition
she advised the defendant by letter of her need to occupy the
house as her dwelling, having reiterated such purpose by reg-

istered letters with return receipts requested which were mailed to the defendant on March 9, April 13, and June 19, 1948; that the lease contract with the previous owner was not ratified in any way whatsoever by the plaintiff and that, in spite of the latter's requests, the defendant refused to vacate the upper floor of said house, his occupancy being unlawful since no title or contract justified such occupancy.

The defendant answered accepting certain paragraphs of the complaint in full and others in part. He specifically denied that the lease contract with the previous owner had not been ratified by the plaintiff, alleging on the contrary that plaintiff had entered into a lease contract with him when the former took possession of the property purchased; that a monthly rental of $30 was agreed to, payable on the last day of each month, said payments beginning on January 1948, which latter payment was made by the defendant at the end of that month and thereafter at the end of February and March of said year; that the plaintiff, through her lawyer, terminated said lease contract by registered letter of April 13, 1948; that, however, the defendant continued to pay the rentals corresponding to the months from April to November as they became due. He denied plaintiff's allegation that she acquired the real property described in the complaint exclusively in order to utilize it in good faith and for occupancy by herself and her family as their dwelling, alleging on the contrary that the property consisted of three dwellings, including defendant's; that the plaintiff wished to recover possession of said dwelling in bad faith, for she had filed in the same court three unlawful detainer complaints alleging the same cause of action, one against Conchita Gutiérrez de Sécola, another against Críspulo Díaz and still another against Armando Marcial. He likewise alleged that Conchita Gutiérrez de Sécola vacated her dwelling, which was at the disposal of the plaintiff for her personal use as a dwelling together with her family. After having acknowledged receipt of the letters listed in the complaint, he denied that the letters of

March 9, April 13, and June 19, 1948, were intended to reiterate plaintiff's intention to recover the property, and specifically alleged that he was occupying the upper floor of the house by virtue of certain acts of the plaintiff herself, who, upon terminating the lease contract on April 13 through her attorney, granted him 60 days to vacate, which period was later extended to 180, to become due on July 19, 1948; that he was not a *tenant at sufferance*, since he had paid *as rent* the monthly rentals from January to November of that year.

As a special defense he alleged that the lower court lacked jurisdiction, since when the plaintiff renewed the lease contract existing with the previous owner for a monthly rental of $30 and accepted in payment as rent the rentals corresponding to January, and so forth, she ratified said previous contract, which the plaintiff terminated on March 9, not being therefore a *tenant at sufferance* but a *lessee*, wherefore jurisdiction to commence the action was in the municipal court.

After a trial on the merits, the complaint was granted.

In settling the jurisdictional question raised by the defendant, the lower court stated:

"Inasmuch as a question of law has been raised to the effect that the court lacks jurisdiction because the lease contract which the defendant alleges exists between him and the plaintiff involves a monthly rental of $30 for which reason it would not exceed $1,000 annually, it is imperative that we decide this question of law according to the evidence introduced herein. Only such evidence will enable us to determine whether or not such contract existed.

"The documentary, as well as the oral evidence introduced by the parties, discloses the following facts:

"1. That the plaintiff purchased the property, on the second floor of which defendant lives, from Juan S. Marcano and Monserrate Polo, on January 21, 1948, pursuant to deed No. 27 executed before Notary Antonio L. López.

"2. That the defendant lived on the second story of said house pursuant to a contract entered into between him and the previous owner, Juan S. Marcano, and for a monthly rental of $30.

"3. That on that same January 21, 1948 the plaintiff, personally and by registered mail, addressed a letter to the defendant, Silverio Morales, notifying him that she had purchased the house where he lived in the second floor, in order to occupy same personally. In this same letter the defendant was advised that he was expected to vacate the premises not later than February 10, 1948, leaving the apartment at plaintiff's disposal.

"4. That on March 9, April 13 and July 19, 1948, the plaintiff, through her attorney, again addressed the defendant on three different occasions requesting him to vacate the premises he occupied in her property and giving him time as provided by the law in force on the dates of each and every letter.

"5. That the defendant tendered to the plaintiff payments of $30 by checks corresponding to the months from February to August 1948.

"The defendant alleges that plaintiff's acceptance of the payment of $30 monthly, which is the amount of the rental involved in the contract between the latter and the previous owner, is equivalent to a ratification of the contract by the plaintiff. He also alleges that the attorney himself mentions in his letters a contract between the plaintiff and the defendant.

"On her part, plaintiff insists that from the beginning she made clear her intention not to ratify the contract between the defendant and the previous owner and that if she accepted said money from the defendant for the aforesaid months it was as compensation for the use given by the defendant to her property while she was compelled, by prescription of law, to wait for several terms to expire before filing her complaint. The oral testimony of both parties tends to support their respective viewpoints.

"It seems clear to the court that ever since the first day on which she acquired the house, and by registered letter addressed to the defendant, plaintiff made clear her intention to have the defendant vacate his living quarters and to leave the same at plaintiff's disposal by February 10, 1948. It is also clear that in three consecutive letters dated March 9, April 13, and July 19, 1948 the plaintiff addressed the defendant through her attorney advising him of her intention not to continue the contract and threatening to file suit against him if he did not vacate the premises. In her letter of July 19, 1948 the defendant was informed that he was being given six months to comply with Act 201 of March 15, 1948. If we construe the last three letters

written by the plaintiff in harmony with her letter of January 21, 1948, and notwithstanding the fact that plaintiff's attorney speaks of a lease contract, we must reach the conclusion that from the very moment that the plaintiff acquired the house she repudiated the contract between the defendant and the previous owner of the house and that it was always her intention not to renew it. This clearly appears also from the third allegation of the complaint and from the documentary evidence introduced by the plaintiff which is believed by the Court."

After citing *Vélez* v. *San Miguel*, 68 P.R.R. 534, it said:

". . . It is true that in the case at bar the plaintiff received payments of $30 corresponding to the months from February to January, 1948, but it is nonetheless true, in our opinion, that right from the beginning the plaintiff made clear her request to have her property vacated by the defendant because she needed the same to live in it herself.

"From the situation disclosed by the facts and the evidence we conclude that there was no contract whatever between the plaintiff and the defendant and that the latter was a tenant at sufferance.

"As a question of law the court decides that the action was properly filed in this Court and that we are vested with jurisdiction herein. Having thus decided the question of law, we must now consider the evidence in order to determine whether the plaintiff complied with the conditions prescribed by Act 201, *supra.*"

The Court then found the following:

"1. That the plaintiff purchased the house described in the complaint in order to reside in it herself.

"2. That on the date of the complaint plaintiff did not have available any other adequate property in which to establish her residence.

"3. That the plaintiff was residing in an uncomfortable house in the same locality and quite inadequate for use by herself and her family.

"4. That the plaintiff wishes to occupy the upper floor of her house in good faith for her personal use."

Defendant contends on appeal that the lower court erred (1) in deciding that he was a tenant at sufferance in the up-

per floor he occupied in plaintiff's property and that the lower court had jurisdiction, and (2) in deciding that the plaintiff acted in good faith and had no other available, adequate dwelling in which to establish her residence.

■ As to the first error the lower court acted correctly in assuming jurisdiction, inasmuch as, in accordance with the evidence it believed, the defendant was a tenant at sufferance pursuant to the doctrine established in *Vélez* v. *San Miguel, supra,* ratified in *Vidal* v. *District Court, ante,* p. 544.

■ As to the second error, appellant invokes *Viera* v. *Municipal Court,* 64 P.R.R. 520, to the effect that a plaintiff in an action of unlawful detainer who seeks to recover possession of a real property for immediate and personal use by himself or his family as a place of residence, manifests his bad faith with regard to the property he seeks to acquire when it is shown that in another suit, about the same date, he has made a similar allegation regarding a different property.

This point was timely submitted to the consideration of the lower court, in a motion for reconsideration, and the lower court expressed itself as follows in deciding same:

"It is true that here plaintiff filed simultaneous complaints against the defendant requesting him to vacate the upper floor he occupies in her property which is amply described in the second paragraph of her complaint; complaint No. R 2657 against Armando Marcial; complaint No. R 2649 against Conchita and Leopoldo Gutiérrez and complaint No. R 2650 against Críspulo Díaz, but it was all due, mainly, to plaintiff's intention to have all occupants vacate the property she had acquired in order to occupy it as her private residence.

"During the presentation of the evidence and when it was established that a property consisting of two dwellings was involved, one in the lower floor and another in the upper floor, and pursuant to the decision in the case of *Viera* v. *Municipal Court, supra,* we called the attention of plaintiff's attorney to the fact that she could not succeed in her complaints against the defendant as the occupant of the upper floor and against Armando Marcial as the occupant of the lower floor of her property,

since the plaintiff needed only one residence or dwelling for the purpose alleged in her cause of action. The plaintiff chose to drop her complaint against Armando Marcial, occupant of the lower story, pressing her complaint against defendant herein, occupant of the upper floor.

"The defendant alleges that the outbuilding back of plaintiff's house had been used as a dwelling and that several families from Caguas had lived there. The defendant says that the fact that the plaintiff labelled said outbuilding servants' quarters, is not enough, since the plaintiff alleged in the complaint against Conchita and Leopoldo Gutiérrez that she needed said outbuilding as a dwelling for herself and her family.

"The plaintiff adequately labelled said outbuilding back of her house as servants' quarters. It appears as such in the second paragraph of her complaint where the property object of this suit is described. With regard to that situation, the following is noted in the aforesaid description '. . . there is an outbuilding of reinforced concrete on the rear of the lot, the upper floor of which is intended for servants' quarters and the lower for garage, etc....' But it is not that the plaintiff labelled thus that outbuilding in her complaint and 'a posteriori' in the evidence of the case, in order to establish her cause of action, but that ever since the time on which she acquired the property involved in this suit, said outbuilding was regarded as servants' quarters. See the deed of purchase and sale of the property. Plaintiff's Exhibit 1.

"In our judgment, the fact that the previous owner had used said outbuilding back of the house belonging to the plaintiff, when he owned it, as a dwelling for said persons, who, because of the condition of emergency accommodated themselves therein as best as they could, does not alter the essential condition thereof as servants' quarters. When the plaintiff acquired the property she was entitled to request the person living in that outbuilding to vacate same in order to use it for, I say, its original purpose: Servants' quarters."

We do not think that the lower court committed the error assigned. Contrary to what happened in *Viera* v. *Municipal Court, supra*, not only no judgment was entered here against any of the other persons occupying plaintiff's property, but the latter dropped her complaint against the occupant of the

lower floor. Hence this case is not ruled by the *Viera* case. In the case at bar the lower court was convinced, from the facts before it, that plaintiff's purpose in bringing several unlawful detainer actions against the various occupants of her property, was to completely vacate the latter in order to utilize it as her private dwelling. We find no ground to alter the conclusion of the lower court.

The judgment will be affirmed.

Mr. Justice Todd, Jr. dissented.